TAYLOR, J.
We affirm the thorough and well-reasoned final judgment of the trial court in this attorneys’ fees litigation, which the trial court characterized as “a case study for a course on professional conduct involving multi-party joint representation agreements and the ethical pitfalls surrounding such agreements when the interests of some of the attorneys and/or their clients come into conflict.”[1]
By way of background, this case has its genesis in claims against Progressive Insurance Company (“Progressive”) for improperly denying or reducing payment to healthcare providers who submitted bills *1114 for payment of PIP benefits covered by Progressive auto insurance policies. The plaintiffs, or the “bad faith lawyers,” were recruited by the defendants, or the “PIP lawyers” to represent health care providers with claims against Progressive. The dispute in the instant litigation arises out of the PIP lawyers’ conduct in engineering a secret $14.5 million global settlement of all the clients’ claims, which resulted in the defendants receiving over $10 million in attorney’s fees and plaintiffs receiving only $420,000 in fees. The bad faith lawyers sued the PIP lawyers on a variety of theories, including unjust enrichment. After a lengthy non-jury trial, the plaintiffs recovered a judgment against defendants Charles Kane, Harley Kane, and the Kane & Kane law firm in the amount of $2 million, and a judgment against Watson, P.A., in the amount of $981,792 on their unjust enrichment claims.
First, we reject defendants’ contention that the plaintiffs’ unjust enrichment claim was barred by an express contract. While we acknowledge the principle that “the law will not imply a contract where an express contract exists concerning the same subject matter,” see, e.g., Kovtan v. Frederiksen, 449 So.2d 1,1 (Fla. 2d DCA 1984), here there was no express contract addressing how the proceeds of a secret, global undifferentiated settlement of both PIP and bad faith claims for all claimants were to be allocated. To support their argument, defendants rely upon express agreements which address only the plaintiffs’ right to fees for the claims of the approximately thirty-seven claimants in litigation known as the Gold Coast case. But the trial court found that the plaintiffs were working to settle the entire universe of bad faith claims (not merely those in the Gold Coast case). Moreover, the trial court’s damages award applied only to fees regarding health care providers who were not part of the Gold Coast bad faith litigation.
Second, we reject without discussion defendants’ argument that the litigation privilege under Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Insurance Co., 689 So.2d 606 (Fla. 1994), precludes the unjust enrichment claim. Under the facts of this case, the litigation privilege does not apply.
Third, we conclude that, because the trial court calculated damages separately as to each defendant, there was no legal basis for a set-off from the pre-trial settlement involving another defendant law firm, which is not a party to this appeal.
Fourth, we find that the trial court did not abuse its discretion in admitting and giving weight to Larry Stewart’s expert testimony on the value of the PIP lawyers’ services, over the defendants’ objections of surprise and lack of foundation. See Philippon v. Shreffler, S3 So.3d 704, 708 (Fla. 4th DCA 2010) (a trial court’s decision to admit evidence is reviewed using the abuse of discretion standard of review, as limited by the rules of evidence). The trial court properly determined that Stewart’s opinions had been disclosed in interrogatories and that his testimony was not a surprise. See Binger v. King Pest Control, 401 So.2d 1310, 1314 (Fla.1981) (explaining that prejudice is “surprise in fact”). Further, while we acknowledge the legal principle that “no weight may be accorded an expert opinion which is totally conclusory in nature and is unsupported by any discernible, factually-based chain of underlying reasoning,” see Div. of Admin. v. Samter, 393 So.2d 1142, 1145 (Fla. 3d DCA 1981), we find that Stewart’s testimony was not based merely on speculation, but rather was founded upon a factually-based chain of underlying reasoning regarding the “assembly-line” nature of the PIP work at issue.
Fifth, in light of the trial court’s finding that the plaintiffs were 50% responsible *1115 for the result achieved against Progressive, we hold that the trial court’s measure of damages was consistent with the law of unjust enrichment. See Levine v. Fieni McFarlane, Inc., 690 So.2d 712, 713 (Fla. 4th DCA1997) (damages for unjust enrichment are based on value from standpoint of the recipient of the benefits); see also Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.Sd 802, 806 (11th Cir.1999) (applying Florida law and stating that unjust enrichment is “measured in terms of the benefit to the owner, not the cost to the provider”); Restatement (ThiRd) of Restitution and Unjust EnRichment § 3 cmt. c. (2011) (“When the defendant has acted in conscious disregard of the claimant’s rights, the whole of the resulting gain is treated as unjust enrichment, even though the defendant’s gain may exceed both (i) the measurable injury to the claimant, and (ii) the reasonable value of a license authorizing the defendant’s conduct.”).
Finally, without further comment, we affirm the cross-appeal.

Affirmed.

POLEN and STEVENSON, JJ., concur.

. We consolidated these cases, 4D08-4751, 4D08-4584, and 4D08-4845, for opinion purposes.