[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12152
Non-Argument Calendar

_____

D.C. Docket No. 0:18-cv-61185-UU

OJ COMMERCE, LLC,

Plaintiff - Appellant,

versus

ASHLEY FURNITURE INDUSTRIES, INC.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(May 29, 2020)

Before GRANT, TJOFLAT, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Plaintiff OJ Commerce, LLC, appeals the district court's grant of Defendant Ashley Furniture Industries, Inc.'s motion to dismiss Plaintiff's amended complaint. After careful review, we affirm.

## I.     BACKGROUND[1]

Plaintiff is an e-commerce retailer that sells products through online marketplaces. In 2013, Plaintiff entered into an Electronic Commerce Agreement to sell furniture manufactured by Defendant directly to consumers. The parties successfully operated under that agreement until February 2018 when Defendant terminated the business relationship.

Plaintiff brought this action to recover money it invested to market and sell Defendant's furniture products. Plaintiff contends it "entered into a valid contract through [various] oral agreements" made during 2017 that called for Plaintiff to invest in improving its catalog, establishing a "less than truckload" shipping relationship, running marketing promotions, and integrating with Defendant's inventory system.

On December 7, 2017, employees of Defendant met with Plaintiff and "re-asserted all the promotions, investment, and marketing [Defendant] wanted

---

[1] Because we are reviewing the district court's dismissal of Plaintiff's claims, we set forth the relevant facts as alleged in Plaintiff's amended complaint, construing them in the light most favorable to Plaintiff. *Landau v. RoundPoint Mortg. Servicing Corp.*, 925 F.3d 1365, 1367 (11th Cir. 2019).

[Plaintiff] to invest in and run *through the end of 2018*." Complaint at ¶ 20 (emphasis in original). In return, Defendant allegedly promised that "their relationship would continue for the full 2018 calendar year" and that "it would provide greater access, increased merchandise, discounts, incentives, and support through the 2018 calendar year so that, in 2018, [Plaintiff] would earn back all the money it invested, and more." Plaintiff alleges that it made investments toward fulfilling Defendant's requests before Defendant terminated the relationship on February 13, 2018.

Plaintiff brought a breach of contract claim (Count 1), alleging in an amended complaint that Defendant "materially breached the contract when it completely ceased its business relationship with [Plaintiff]." Plaintiff also asserted claims for promissory estoppel (Count 2), fraudulent misrepresentation (Count 3), negligent misrepresentation (Count 4), and unjust enrichment (Count 5).

Defendant successfully moved to dismiss Plaintiff's amended complaint. The district court found Plaintiff's breach of contract claim barred by Florida's statute of frauds because "each oral agreement was allegedly entered into in 2017, and contemplated performance through the end of 2018, it was not possible that each contract could be fully performed within one year." The court also held that Plaintiff's promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation claims were also barred by the statute of frauds.

3

While not subject to the statute of frauds, the district court dismissed Plaintiff's equitable claim for unjust enrichment because Plaintiff failed to plausibly plead that it would be inequitable for Defendant to retain whatever benefit Plaintiff provided without paying the value thereof to Plaintiff.  In short, the district court concluded that Plaintiff failed to allege, and could not allege, that Defendant wrongly continued to benefit from Plaintiff's marketing efforts.  Accordingly, the district court dismissed all of Plaintiff's claims with prejudice.

Plaintiff moved for reconsideration of the district court's dismissal order under Federal Rules of Civil Procedure 59(e) and 60(b)(1) and sought relief from that order to file another amended complaint.  Plaintiff argued that the statute of frauds did not apply because Plaintiff had fully performed its obligations under the agreement and parts of the agreement could have been completed in less than a year.  Plaintiff maintained its unjust enrichment claim was viable because its marketing efforts increased Defendant's brand recognition.  Plaintiff submitted a proposed Second Amended Complaint it contends cures any deficiencies in the claims dismissed by the district court.

The district court denied Plaintiff's motion for reconsideration under Rule 59(e) and declined to permit a second amended complaint.  The district court found the full performance exception to the statute of frauds did not apply because that exception is limited to claims at equity, not claims for damages.  It further found

that Plaintiff did not allege full performance because the agreement contemplated performance through 2018.  In addressing Plaintiff's argument that its breach of contract claim involved several agreements and that at least one of these agreements could have been completed in less than a year, the district court found "the most logical interpretation of the allegations in the complaint and [Plaintiff's] response to Defendant's motion to dismiss is that there was only one contract whose terms incorporated all the previous oral discussions."  Regardless, the district court concluded that all oral agreements that formed the contract required performance through 2018.  It declined to sever the oral agreements into "sub-agreements," some of which Plaintiff contends could have been performed in under a year, because Plaintiff failed to raise that argument in opposition to Defendant's motion to dismiss.

The district court rejected Plaintiff's unjust enrichment arguments as merely repetitive and denied Plaintiff's motion for leave to amend as untimely filed after judgment was entered, noting also that the proposed amendment still did not plausibly allege unjust enrichment.

## II.    DISCUSSION

Plaintiff appeals the district court's dismissal order.  We review the dismissal of Plaintiff's amended complaint for failure to state a claim pursuant to Rule 12(b)(6) *de novo*.  *Landau*, 925 F.3d at 1369.  We accept the factual

5

allegations in the amended complaint as true and construe them in the light most favorable to Plaintiff.  *Id.*

Plaintiff maintains the district court erred in applying the statute of frauds to dismiss its claims grounded on oral agreements made throughout the 2017 calendar year.  It further contends that it plausibly alleged an unjust enrichment claim and that, in any event, the district court should have permitted it to file a second amended complaint including additional factual allegations that cured the perceived deficiencies.  We address each argument in turn.

### A.    The Florida Statute of Frauds Bars Plaintiff's Contract, Promissory Estoppel, and Misrepresentation Claims

Plaintiff maintains the district court erred in holding that the Florida statue of frauds barred its claims for breach of oral contract, promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation.[2]  Florida's statute of frauds requires contracts that cannot be performed within a year to be in writing.  Fla. Stat. § 725.01;[3] *see DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85, 91–92 (Fla. 2013).

---

[2]  Neither party challenges the district court's determination that Florida law governs Plaintiff's claims.  Accordingly, we will apply Florida law.

[3]  Fla. Stat. § 725.01 provides:

No action shall be brought ... upon any agreement that is not to be performed within the space of 1 year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.

Plaintiff has not appealed the district court's finding that the December 2017 contract was unenforceable because of the statute of frauds. As alleged in Plaintiff's amended complaint, the December 2017 agreement "re-asserted all the promotions, investment, and marketing [Defendant] wanted [Plaintiff] to invest in and run through the end of 2018." And it was this agreement that formed the singular "contract" alleged to be breached by Defendant in Count 1 of Plaintiff's Amended Complaint.

Rather than rely on the December 2017 contract specifying the parties' intentions for 2018, Plaintiff parses out the oral agreements that comprise the December 2017 contract, asserts that "there are four agreements at issue: July, September, November, and End-of-2017," and contends that each of these alleged oral agreements are separate and distinct contracts that should individually be assessed for compliance with the statute of frauds. Plaintiff makes three arguments that these agreements survive the statue of frauds: (1) it alleged it fully performed its contractual obligations and therefore the statute of frauds does not apply; (2) as alleged, the "End-of-2017" agreement could have been completed in less than one year; and (3) each of the four agreements contained yet another sub-agreement that could have been performed within a year. As explained below, even if we were to

7

liberally read Plaintiff's amended complaint as alleging breach of multiple, distinct

oral contracts,[4] we do not find these arguments persuasive.

### 1.    The Full Performance Exception to the Florida Statute of Frauds Does Not Save Plaintiff's Claims

Florida law allows for exceptions to the statute of frauds in certain

circumstances where there has been full or partial performance by a party.  The full

performance exception applies only if the parties intended that a party would, and

actually did, fully perform its party of the agreement within one year.  *See Collier*

*v. Brooks*, 632 So. 2d 149, 154–55, 158 (Fla. 1st D.C.A. 1994).  The parties dispute

whether the full performance exception applies in this action for damages not

involving the sale of land.  Some cases applying Florida law hold that the full

performance exception applies only in cases at equity when the relief sought was

specific performance.  *See, e.g., Topp, Inc. v. Uniden Am. Corp.*, 483 F. Supp. 2d

1187, 1194–95 (S.D. Fla. 2007).  Other cases have applied the exception in broader

circumstances.  *See TLZ Props. v. Kilburn-Young Asset Mgmt. Corp.*, 937 F. Supp.

1573, 1580–81 (M.D. Fla. 1996) ("The statute of frauds may not be utilized as a

defense to a verbal contract that has been fully performed on the part of the person

---

[4]  We agree with the district court's conclusion that Plaintiff's amended complaint plainly alleges breach of only one contract, the December 2017 oral agreement.  While the amended complaint describes promises allegedly exchanged throughout 2017, it refers to one oral "contract," alleging that "[Plaintiff] entered into *a valid contract* through the oral agreements described above."  It further alleges satisfaction of "all conditions precedent to *the contract*" and that "[Defendant] materially breached *the contract*."  That contract comprised the terms and obligations previously discussed by the parties.

claiming the benefit thereof.").  However, we need not decide whether the full performance exception applies in this action for damages because the amended complaint does not sufficiently allege Plaintiff's full performance even when all inferences are drawn in Plaintiff's favor.

The amended complaint states that Plaintiff was to "invest in and run *through the end of 2018*" all of the promotions, investments, and marketing discussed in July, September, November, and toward the end of 2017.  Amended Complaint ¶ 20 (emphasis in original).  It further states that "[Defendant] promised [Plaintiff] that in return for these investments, their relationship would continue for the full 2018 calendar year."  Amended Complaint ¶ 21.  Consistent with those general allegations, Count 1 for breach of contract further contemplates Plaintiff's marketing and promotion of Defendant's goods "through the 2018 calendar year." Amended Complaint ¶ 35.  Plaintiff ceased marketing and promoting Plaintiff's goods in February 2018, when Defendant ended the relationship, and Plaintiff brought this action in May 2018, well before the end of the calendar year. Moreover, Plaintiff did not allege full performance, stating in its amended complaint only that it made investments and progress toward fulfilling its obligations.[5]  Amended Complaint ¶¶ 25–30.  Thus, as alleged, Plaintiff did not,

---

[5]  Plaintiff sought to remedy this deficiency by including in its proposed second amended complaint the allegation that "[i]n reliance on [Defendant's] promises, [Plaintiff] undertook this

and could not, fully perform its obligations under the alleged agreement(s) and the full performance exception is inapplicable.

2.    The "End-of-2017" Agreement Extended Beyond One Year

Plaintiff contends that the End-of-2017 Agreement "could certainly have been fully performed by both parties within one year" and, therefore, should not be subject to the statute of frauds. We disagree.

As argued by Plaintiff, the allegation supporting a separate "End-of-2017" Agreement states:

> Towards the end of 2017, [Defendant] requested [Plaintiff] update its catalogue of [Defendant] products with the thousands of new and updated items [Defendant] had rolled out for 2018. [Defendant] reiterated its promise that if [Plaintiff] undertook this investment, it would provide [Plaintiff] with greater access, increased merchandise, discounts, incentives, and support through the 2018 calendar year so that, in 2018, [Plaintiff] would earn back all the money it invested, and more. [Defendant] knew this update would be very costly to [Plaintiff].

Amended Complaint ¶ 19. As alleged, that agreement required Defendant's performance "through the 2018 calendar year." The alleged agreement having come "[t]owards the end of 2017" and extending through 2018, it could not have been completed in one year.

That Plaintiff may have earned back its money in less than a year, does not, as Plaintiff contends, alter the term of the agreement as alleged. Indeed, as alleged,

---

investment and fully performed." Proposed Second Amended Complaint ¶ 13. As discussed below, the district court properly denied Plaintiff leave to file another complaint.

Plaintiff was to "earn back all the money it invested, *and more*." *Id*. (emphasis added). Thus, the agreement as alleged did not contemplate completion upon Plaintiff earning its money back. Rather, as stated, the parties intended the agreement to extend "through the 2018 calendar year." Accordingly, the End-of-2017 Agreement could not have been completed in less than a year and the statute of frauds applies.

### 3.    Plaintiff Failed to Timely Raise Any Argument Regarding Sub-Agreements

Parsing the oral discussions of 2017 even further, Plaintiff contends that the July, September, and November oral agreements alleged to comprise the December 2017 contract should each be construed as containing two "sub-agreements," one of which did not violate the statute of frauds and could be severed from the remainder of the unenforceable contract. Plaintiff first raised severability in its motion for reconsideration and the district court rejected it as untimely. While Plaintiff noted in opposition to Defendant's motion to dismiss that certain obligations within the agreements could be completed within one year, Plaintiff did not raise severability. "Motions for reconsideration should not be used to raise legal arguments which could and should have been made before the judgment was issued." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1267 (11th Cir. 1998). Accordingly, the district court did not abuse its discretion in rejecting Plaintiff's severability argument as untimely.

11

**B.     The Amended Complaint Fails to State a Claim for Unjust Enrichment**

We agree with the district court that Plaintiff's amended complaint fails to state a claim for unjust enrichment.  A claim for unjust enrichment under Florida law requires showing that:  (1) plaintiff has conferred a benefit on defendant; (2) defendant voluntarily accepted and retained that benefit; and (3) the circumstances are such that it would be inequitable for defendant to retain it without paying the value thereof.  *Virgilio v. Ryland Grp., Inc.*, 680 F.3d 1329, 1337 (11th Cir. 2012), citing *Fla. Power Corp. v. City of Winter Park*, 887 So. 2d 1237, 1241 n.4 (Fla. 2004) (quoting *Ruck Bros. Brick, Inc. v. Kellogg & Kimsey*, Inc., 668 So. 2d 205, 207 (Fla. 2d D.C.A. 1995)).

The district court correctly found that the factual content of Plaintiff's amended complaint does not plausibly allege either that Defendant retained a benefit from any alleged marketing by Plaintiff or that Defendant unjustly failed to pay the value of any retained marketing benefit.  Plaintiff merely alleges that it "expend[ed] resources and funds related to marketing and promoting [Defendant's] products," that "marketing, advertising, and promoting of Ashley's products have conferred a benefit on [Defendant]," and that "[t]he circumstances are such that it would be inequitable for [Defendant] to retain the benefit of the marketing and promotion of its products without paying their fair value to [Plaintiff]."  Amended Complaint ¶¶ 27, 62, 64.  That is the kind of "formulaic recitation of the elements

12

of a cause of action [that] will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must instead plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff did not do that.

The amended complaint does not describe the nature of any retained marketing benefit, much less indicate why the marketing conducted by Plaintiff conferred an unjust benefit on Defendant when Plaintiff also benefited from its marketing efforts through product sales. *See Am. Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331–32 (Fla. 5th D.C.A. 2007) ("When a defendant has given adequate consideration to someone for the benefit conferred, a claim of unjust enrichment fails."). That Plaintiff invested in marketing Defendant's products, but did not recoup its investment, does not alone establish unjust enrichment. *See, e.g. Tooltrend, Inc. v. CMT Utensili, SRL*, 198 F.3d 802, 806 n.5 (11th Cir. 1999) (in a claim for unjust enrichment, the "'unjustness' of the enrichment [is] measured in terms of the benefit to the owner, not the cost to the provider."), citing *Levine v. Fieni McFarlane, Inc.*, 690 So. 2d 712, 713 (Fla. 4th D.C.A. 1997). Moreover, the factual allegations in Plaintiff's amended complaint do not support Plaintiff's assertion on appeal that Defendant unjustly benefited from "increased [] brand recognition."

13

Plaintiff's conclusory allegations of a conferred benefit, unsupported by specific factual allegations, do not state a claim for unjust enrichment. Accordingly, we affirm the district court's dismissal of Plaintiff's unjust enrichment claim.

## C.    The District Court Did Not Err in Denying Plaintiff Leave to File a Second Amended Complaint

Plaintiff contends the district court abused its discretion in denying its post-judgment motion requesting leave to file a second amended complaint because leave is to be freely given under Federal Rule of Civil Procedure 15(a).  However, "Rule 15(a), by its plain language, governs amendment of pleadings *before* judgment is entered; it has no application *after* judgment is entered."  *Jacobs v. Tempur-Pedic Int'l, Inc.*, 626 F.3d 1327, 1344 (11th Cir. 2010) (emphasis in original).  "Post-judgment, the plaintiff may seek leave to amend if he is granted relief under Rule 59(e) or Rule 60(b)(6)."  *Id.* at 1344–45, quoting *United States ex rel. Atkins v. McInteer*, 470 F.3d 1350, 1361 n.22 (11th Cir. 2006).  "The only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact."  *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (alteration in original), quoting *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999).  "[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of

14

judgment." *Id.* (alterations in original), quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005).

Here, Plaintiff appealed only "from the Order of Dismissal entered by the Court in this action on September 17, 2018 [D.E. 27]" and did not expressly appeal the district court's order denying Rule 59(e) or Rule 60(b)(6) relief.  Moreover, Plaintiff failed to demonstrate that the district court erred in dismissing Plaintiff's claims, much less that the district court abused its discretion in finding no manifest error of law or fact warranting Rule 59(e) or Rule 60(b)(6) relief.  Accordingly, even if we have jurisdiction to consider this issue, no grounds exist to grant Plaintiff's request for relief under Rule 59(e) or Rule 60(b)(6).  Absent a grant of relief under Rule 59(e) or Rule 60(b)(6), we cannot conclude the district court abused its discretion in denying Plaintiff leave to file a second amended complaint post-judgment.  *Jacobs*, 626 F.3d at 1344–45.

## III.    CONCLUSION

For the reasons explained above, we **AFFIRM** the decision of the district court.

15